## AMERICAN RADIATOR AND STANDARD SANITARY CORPORATION v. MARK ENGINEERING COMPANY

[No. 171, September Term, 1962.]

*Decided February 7, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Alva P. Weaver, III,* and *Robert E. Coughlan, Jr.,* with whom were *Lord, Whip, Coughlan & Green* on the brief, for the appellant.

*Paul F. Due,* with whom was *Richard C. Whiteford* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

In 1948, in *Standard Wholesale Phosphate & Acid Works, Inc. v. Rukert Terminal Corp.,* 193 Md. 20, this Court construed the Longshoremen's and Harbor Workers' Compensation Act and, finding no controlling federal decisions on the point, held that the act made the obligation of a conforming employer to pay compensation to an injured employee exclusive and in place of all other liability to the employee or anyone else otherwise entitled to recover damages from the employer, at law or in admiralty, on account of the injury or death of the employee. From this the Court concluded that, in the absence of an express contractual agreement to assume an obligation to indemnify, as distinguished from an implied or quasi-contractual obligation, the act foreclosed all right to contribution or indemnity from the employer.

A similar conclusion had been reached by the Court in *Baltimore Transit Co. v. State, Use of Schriefer,* 183 Md. 674, in deciding that an employer who had conformed to the Workmen's Compensation Act could not be held liable for contribution in part or in full, as a joint tortfeasor, to one liable in tort to the injured employee. The Supreme Court reached the same result on this point under the Longshoremen's Act in *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.,* 342 U. S. 282, 96 L. Ed. 318.

In 1956, the Supreme Court in a five to four decision, in *Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp.,* 350 U. S. 124, 100 L. Ed. 133, held, in a suit by an employee of a stevedoring contractor to recover from a ship owner damages for

injury resulting from improper stowage of cargo aboard the ship, that the ship owner could maintain a third party complaint against the contractor on an implied obligation to indemnify arising from its contractual undertaking to the ship owner to stow the cargo properly and safely. The majority of the Court found the Longshoremen's and Harbor Workers' Compensation Act not to bar recovery from the employer on an implied agreement to indemnify any more than it would on an express agreement. The Supreme Court's construction of the Act was diametrically contrary to that of this Court in *Rukert*. *Ryan* has been followed by three other cases in the Supreme Court in which the Court held unanimously that the Act permitted recovery against the employer on its implied agreement to indemnify.[1]

In the case before us, the appellant, American Radiator and Standard Sanitary Corporation, employed Mark Engineering Company by written contract to repair its elevated water tank at its Baltimore plant. Mark covenanted that all workmanship would be of good quality and all work free from unnecessary hazards. Melvin Lambert, a painter employed by a subcontractor of Mark, was injured while at work on the water tank when a repaired rod, claimed to have been improperly welded by Mark, gave way, and he fell. Lambert was paid compensation by the insurance carrier of the subcontractor, his actual employer (it is agreed that Mark was his statutory employer, *State, Use of Hubert v. Benjamin F. Bennett Building Co.*, 154 Md. 159). Lambert and the insurance carrier sued American, claiming his damages had been caused by its failure to provide him a safe place to work. American filed a third party action against Mark, alleging that the latter had breached its contract by failing to perform its work in a careful and workmanlike manner and, as a result, was obligated to indemnify American for any liability it had as a result of the failure of the work. Judge Prendergast sustained a demurrer filed by Mark to the third party complaint without leave to amend.

---

1. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U. S. 563, 2 L. Ed. 2d 491; Crumady v. "Joachim Hendrik Fisser," 358 U. S. 423, 3 L. Ed. 2d 413; Waterman Steamship Corporation v. Dugan and McNamara, 364 U. S. 421, 5 L. Ed. 2d 169.

American urges us to apply the reasoning and conclusions of *Ryan* to the interpretation of the Maryland Workmen's Compensation law because that law provides, in language indistinguishable in substance from that of the Longshoremen's and Harbor Workers' Compensation Act, that a conforming employer who pays compensation shall have no other and further liability on account of the accidental injury of his employee. It is true that the Supreme Court's interpretation of the meaning and effect of the federal act is binding on this Court, as was recognized in *Rukert* at page 24 of 193 Md. ("In construing that act, we are bound by authoritative construction placed upon it by the federal courts.") It is equally true that the federal courts, including the Supreme Court, are bound by the interpretation given by this Court to a Maryland statute, absent a federal constitutional question. *Erie R.R. Co. v. Tompkins,* 304 U. S. 64, 82 L. Ed. 1188.

If it be assumed, as appellant suggests would be the case, that the Supreme Court, had it to do, would on the same facts construe the Maryland Workmen's Compensation Act just as it construed the Longshoremen's and Harbor Workers' Compensation Act, its construction would be entitled to respectful consideration by this Court but need not be binding on it.

The reasoning of the majority in *Ryan* was (a) that the stevedore's contract to stow the cargo properly and safely amounted to a warranty of workmanlike service comparable to a manufacturer's warranty of the soundness of its product; (b) that the Act admittedly did not bar an employer from expressly assuming an obligation to indemnify; and (c) that the warranty to stow the cargo properly and safely had the effect and consequence of an express agreement of indemnity. We have not been convinced that this reasoning is sound or that it does not amount to judicial alteration of legislative meaning and purpose, as the minority opinion contends.

The minority opinion took the view we took in *Rukert*. It agreed that the Act does not forbid independent contracts by employers to indemnify and that "common-law indemnity may sometimes arise where two people commit a tort or wrong which hurts the same person." It suggested that under the majority opinion liability is imposed because of the negligence

of the employer's other employees and that the Act forbids this whether it be called "common-law indemnity," "contribution," "subrogation," or any other name. Whatever the label, said the minority, "The employer has to pay more 'on account of' an injury to his employee than Congress said he should." The minority then added: "* * * indemnity so imposed is plainly 'on account of' the negligence of the wrongdoer or his employees. The Act expressly forbids such a recovery by 'anyone' from a stevedoring company 'on account' of an injury to one of its longshoremen. Plainly, common-law indemnity should not be used to fasten such a liability on a stevedoring company."

American tells us that of some seven decisions which have been handed down since *Ryan*, all but one have followed it, and this shows that the decision was sound. Five were decisions of federal courts which, in ruling on State laws, found no controlling State decision and followed *Ryan*.[2] Another was a decision of an intermediate appellate court of Illinois.[3] The only decision since *Ryan* of a State court of last resort on the point is *Royal Indemnity Co. v. Southern Cal. Petroleum Corp.* (N. M.), 353 P. 2d 358. The New Mexico Supreme Court did not follow *Ryan*, finding that to do so would contravene the clear intent of the Legislature.

In deciding *Rukert*, we considered decisions in various federal and state courts where contribution or indemnity had or had not been allowed against an employer, as the case might be, and did not follow those agreeing with the *Ryan* view. It was noted that in *Schriefer* the Court had construed the compensation law of Maryland to preclude recovery by means of a third party complaint for the negligent act of an employer producing or contributing to an injury because the employer should not be held liable indirectly for an amount that could not be recovered directly, counter to the legislative purpose and in-

---

2. Pearson v. National Trust for Historic Preservation, 145 F. Supp. 378; Atella v. General Electric Co., 21 F. R. D. 372; General Electric Co. v. Moretz, 270 F. 2d 780; Booth Steamship Co. v. Meier & Oelhaf Co., 262 F. 2d 310; Koninklyke Nederlandsche, Etc. v. Strachan Shipping Co., 301 F. 2d 741.

3. Moroni v. Intrusion-Prepakt, Inc., 24 Ill. App. 2d 534, 165 N. E. 2d 346.

tent that liability for compensation be exclusive, and this reasoning was followed in our construction of the federal act. Thus, *Rukert* and *Schriefer* followed the course later followed by the minority in *Ryan*.

Since 1948, when *Rukert* was decided, employers in Maryland have been entitled to rely on the assumption that they would not be liable for or on account of an injury to an employee, beyond payment of compensation, unless they expressly waived immunity by agreeing to assume an obligation for contribution or indemnity. We are not persuaded that the reasoning and results of *Schriefer* and *Rukert* were wrong or that the law as established by the decisions in those cases should be overturned, unless it be done prospectively by the Legislature.

The Maryland Workmen's Compensation Act, Code (1957), Art. 101, Sec. 15, makes the statutory payment of compensation the exclusive remedy for "disability or death" of an employee resulting from an accidental personal injury arising out of and in the course of employment. To impose additional liability on the employer because of the accidental personal injury by implying an obligation to waive a statutory immunity from an undertaking to do a job in a workmanlike manner would, as we saw it in *Schriefer* and *Rukert* and as we see it now, make the employer pay more on account of an injury to his employee than the Legislature intended he should pay, by judicially altering the meaning of clear, unambiguous statutory language. This we are not required by *Ryan* to do, and we shall not do it.

*Judgment affirmed, with costs.*