**W. W. HOBART, Administrator of the Estate of Kenneth Ray McClure Hobart, Deceased, et al., Plaintiffs,**

v.

**SOHIO PETROLEUM COMPANY, Defendant-Third Party Defendant-Appellant,**

v.

**OIL TRANSPORT COMPANY, and Greenville Towing Company, Third-Party Defendants-Third Party Plaintiffs-Appellees,**

v.

**W. W. HOBART et al., Third-Party Defendants.**

**No. 29575.**

United States Court of Appeals, Fifth Circuit.

June 29, 1971.

William G. Beanland, Vicksburg, Miss., for Sohio Petroleum Co.; Bruni-

ni, Everett, Grantham & Quin, Vicksburg, Miss., of counsel.

James L. Robertson, Fred DeLong, Jr., Greenville, Miss., Harold R. DeMoss, Jr., Houston, Tex., Campbell, DeLong, Keady & Robertson & Hagwood, Greenville, Miss., Bracewell & Patterson, Houston, Tex., for Greenville Towing Co.

Philip Mansour, Greenville, Miss., for W. W. Hobart, et al.

Brunswick G. Deutsch, New Orleans, La., for Oil Transport Co.; Deutsch Kerrigan & Stiles, New Orleans, La., of counsel.

Before RIVES, THORNBERRY and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

In this appeal we are presented with the question whether the indemnity doctrine enunciated in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), may be invoked against a shipowner and in favor of a shipper who has been sued for the wrongful death of the shipowner's employees. The appeal as taken from district court's denial of the shipper's third-party complaint against the shipowner.

The salient facts are as follows: In 1961, Sohio Petroleum Company (Sohio) contracted Oil Transport Company to ship a quantity of crude oil from Sohio's producing fields in Wyoming to its refinery in Kentucky. Oil Transport, in turn, subcontracted certain individual shipments of the Sohio cargo to Greenville Towing Company. On September 7, 1961, the *M/V Walter Williamson*, a vessel belonging to Greenville Towing, along with its tow, the barges GTC–3, –4, and –5, containing some of the aforementioned shipments of Sohio crude oil, docked at the Sohio Terminal in Mayersville, Mississippi. The plaintiffs' decedents, crewmembers of the *M/V Walter Williamson*, were engaged in discharging the cargo at Mayersville. In the course of their duties, the decedents en-

tered the hold of one of the barges, were overcome by hydrogen sulfide gas fumes from the cargo, and died. The plaintiffs made claims directly against Greenville Towing for the deaths of the two seamen, and a settlement of those claims was effected, in exchange for which Greenville Towing secured a release from the plaintiffs and an indemnity agreement whereunder the plaintiffs agreed to hold Greenville Towing harmless should it be impleaded by Sohio in any proceedings instituted by plaintiffs against Sohio. Plaintiffs did file suit against Sohio, on the theory that Sohio, as the shipper, owed a common-law duty to warn plaintiffs' decedents of the toxic nature of its oil shipment and breached that duty. Sohio answered and filed a third-party complaint against Oil Transport and Greenville Towing, asserting that if it was liable to plaintiffs for anything, such liability was solely caused by the fault of Greenville Towing and Oil Transport, and they should bear the liability. Greenville Towing answered the third-party complaint, and *inter alia,* counterclaimed and cross-claimed against the plaintiffs, relying on its indemnity agreement with the plaintiffs.

The court below severed the issues between plaintiffs and Sohio from the remaining issues between Sohio and Greenville Towing, etc., and stayed proceedings on those remaining issues until the issues between plaintiffs and Sohio were resolved. The trial between plaintiffs and Sohio resulted in a final judgment in favor of Sohio, affirmed by this Court on May 15, 1967. Hobart v. Sohio Petroleum Company, N.D.Miss.1966, 255 F.Supp. 972, aff'd, 5th Cir. 1967, 376 F. 2d 1011.

Upon revival of the remaining issues between Sohio and Greenville Towing, etc., the principal question before the district court was whether Sohio could recover its attorneys' fees and litigation expenses incurred in the successful defense of the plaintiffs' wrongful death action.

■■■ Sohio pursued only one theory of recovery in its claim for indemnity against Greenville Towing and Oil Transport: That there exits on the two shipowners' part a *Ryan*-type implied warranty of workman like performance arising out of Greenville's and Oil Transport's contractual obligations to carry, load and discharge the Sohio cargo.[1] The trial court found, and Sohio does not dispute, that the contracts between Sohio and Oil Transport, and Oil Transport and Greenville, contain *no express indemnity provisions.* The trial court did conclude, however, that this was a *Ryan*-type case.[2] Nonetheless, the

1. Although the parties have not been specific about which law they would have this Court to apply to Sohio's third-party claim—federal maritime law or Mississippi law—it is clear from the pleadings below and from their briefs, which cite only federal cases, that they have drawn a federal maritime boundary around the third party claim. Sohio has neither alleged nor argued that any Mississippi law would entitle it to indemnification from Greenville Towing or Oil Transport. Sohio has taken this position notwithstanding that the plaintiffs' suit against Sohio began not as an admiralty suit, but as a diversity suit predicated on theories of common law negligence as applied in Mississippi. *See* Hobart v. Sohio Petroleum, N.D.Miss.1966, 255 F.Supp. 973, 974–975. Sohio's Choice to pursue a remedy developed under federal maritime law (*Ryan*), of course, is not precluded

by the fact that plaintiffs' suit against Sohio fell on the "civil" side of the court below. *See* Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc., 3d Cir. 1964, 339 F.2d 673, cert. denied, 382 U.S. 812, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). We have deferred to Sohio's choice on this point, and have not ourselves explored the existent, or nonexistent, remedies which might be available to Sohio under Mississippi law. *Compare* Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 5th Cir. 1970, 420 F.2d 1103; General Electric Co. v. Cuban American Nickel Co., 5th Cir. 1968, 396 F.2d 89.

2. In holding that this case would be controlled by *Ryan* and its progeny, the trial court relied primarily on General Electric Co. v. Moretz, 4th Cir. 1959, 270 F.2d 780, cert. denied sub nom., Mason &

trial court held that under the facts of the case, *Ryan* could not be applied because "the demand contained in the * * * [plaintiffs' complaint against Sohio] is not bottomed on an act of negligence, or failure to perform a duty, on the part of the carriers, or either of them, but rather on alleged acts of negligence committed by the shipper, the owner of the cargo * * *" Therefore, the trial court denied Sohio's motion for indemnification against Greenville Towing and Oil Transport. We affirm, but for reasons different from those given by the trial court. Hill v. City of El Paso, 5th Cir. 1971, 437 F.2d 352, 354. Specifically, we conclude that this is not a *Ryan* case at all.

Our task on this appeal is to review the *Ryan* doctrine and its underlying policies in the light of the facts now before us, and decide whether those facts present a *Ryan*-type problem calling for a *Ryan*-type solution. In the *Ryan* case itself, the Supreme Court held that a stevedoring contractor who enters into a services agreement with a shipowner is liable to indemnify the shipowner for any damages sustained as a result of the stevedore's breach of its warranty of workmanlike service. Subsequent decisions have elaborated on the doctrine enunciated in *Ryan*, explaining more clearly than *Ryan* did itself the underlying reasons for the doctrine. These cases make it clear that the *Ryan* doctrine is designed to serve special problems in maritime law arising from the absolute and nondelegable duty of seaworthiness which general maritime law imposes upon all vessel owners. Thus, under

Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) the shipowner is liable for unseaworthiness regardless of negligence, whenever the ship or its gear is not reasonably fit for the purpose for which it was intended. This liability extends to longshoremen and others who work aboard the vessel, including those in the employ of stevedoring companies. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); and if the owner engaged others who supply equipment necessary for stevedoring operations, he must still answer to the longshoreman if the gear proves unseaworthy. Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 2d 798 (1954). When a shipowner has turned his vessel over to a stevedoring company, however, and shipboard injuries result, it obviously seems unjust to hold the shipowner absolutely liable when he was, at the time of the accident, in no position to prevent the injuries. It is to alleviate the harshness of *Sieracki* absolute liability against shipowners in situations when the shipowner has relinquished control of his vessel and another party is better situated to prevent losses caused by shipboard injuries that *Ryan* indemnification is imposed. This, at least, is the message of Supreme Court opinions following *Ryan*. See, e.g., Italia Societa, etc. v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964).

On its facts, the instant case is easily distinguishable from *Ryan*. In *Ryan* the third-party complaint was filed *by* the shipowner, the indemnitee, and against

Dixon Lines, Inc. v. General Electric Co., 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed. 2d 545 (1960). The *Moretz* case has been referred to as "[p]erhaps the leading case expanding the *Ryan* doctrine's application to nonmaritime situations." General Electric Co. v. Cuban American Nickel Co., 5th Cir. 1968, 396 F.2d 89, 92. *Moretz* required a carrier (trucker) to indemnify a shipper for damages recovered against the shipper by one of the carrier's employees who was injured because of the negligent loading of the

shipper's cargo in the carrier's truck. The trial court may have been correct in its conclusion that the *Moretz* case would have encompassed the instant shipper-carrier relationship but this Circuit has never gone as far as *Moretz*. Indeed, the *Moretz* case has been roundly criticized, Dykes, Contractual Indemnity, 27 Ins.Couns.J. 327, 328 (1960), and distinguished almost as often at it has been followed. Casella v. Norfolk and Western Ry. Co. v. Anderson's-Black Rock, Inc., 4th Cir. 1965, 350 F.2d 917.

the contracting stevedore company, the indemnitor. In our case, the third-party complaint has been filed *against* the shipowner, and by the shipper of the cargo being transported. The appellees, Greenville Towing and Oil Transport, argue that this factual distinction is fundamental. *Ryan,* they contend, was designed to give shipowners much needed protection from the *Sieracki* doctrine. Thus, they urge, it should be limited to claims for indemnification by shipowners, and definitely should not be applied *against* shipowners. Pressing further their "protection" argument, they point out that while Sohio, the shipper here, was subject like any other tortfeasor to liability to any person injured by its negligence, its legal duties were not even comparable to the absolute nondelegable duty of a shipowner. Thus, Sohio's need for protection in the form of an indemnity doctrine is by no means as great as the shipowner's need for protection in the *Ryan*-situation, and should not be supplied.

Sohio, on the other hand, stresses not the "protection" aspect of the *Ryan-Italia* rationale, but rather urges that *Ryan* should be applied because Greenville Towing had exclusive supervision and control of the cargo at the time the accident occurred, and was "best situated to adopt preventive measures and thereby reduce the likelihood of injury." *Italia Societa, supra,* 376 U.S. at 324, 84 S.Ct. at 754.

Sohio's emphasis on Greenville Towing's control of the cargo is not misplaced, for *Italia* does indeed stress the "control" factor. But Sohio's argument does not go far enough. The *Ryan* doctrine is an extraordinary doctrine, imposing a substantial and heavy burden on stevedores or others similarly situated. Personal injuries frequently may be causally connected to the distinct activities of more than one tortfeasor. But not always is one entitled to automatic indemnification from the other. Even if one party has "control" of the situation at the time that the injury occurs, it does not always follow that he will be absolutely liable to indemnify all other persons who might be causally connected with the injury. In other words, we do not think that the "control" element alone is sufficient to justify invocation of the *Ryan* doctrine. Our reading of the many cases decided in this Circuit involving the *Ryan* doctrine convinces us that the predicate of the doctrine is the shipowner's absolute nondelegable liability under the seaworthiness guaranty. *See e.g.,* Loffland Bros. Co. v. Roberts, 5th Cir. 1967, 386 F.2d 540, at 549, cert. denied, 389 U.S. 1040, 88 S.Ct. 778, 19 L.Ed.2d 830 (1968) ["The shipowner owes a non-delegable duty to provide a seaworthy vessel and its liability is not dependent on a finding of fault * * *. Recognizing this unique obligation on the part of a shipowner, we have held that the *Ryan* doctrine is closely tied to a vessel and this obligation which the shipowner owes to those employed on the vessel."]; Centraal Stikstof Verkoopkanter, N.V. v. Walsh Stevedoring, 5th Cir. 1967, 380 F.2d 523, 529 ["The implied warranty established in *Ryan* * * * is tied closely to the duties and obligations which the admiralty law imposes on shipowners with respect to those employed by and who work on a ship."]; Ocean Drilling & Exp. Co. v. Berry Bros. Oilfield Service, 5th Cir. 1967, 377 F.2d 511, at 513, cert. denied, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118 (1967), [" * * * we have hesitated * * * to extend [the *Ryan* doctrine] beyond those controversies involving the 'special rules governing the obligations and liability of shipowners' which necessitated its formulation and justify its application."]. *See also* Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 5th Cir. 1970, 420 F.2d 1103. Delta Engineering Corp. v. Scott, 5th Cir. 1963, 322 F.2d 11, cert. denied, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964). We therefore decline Sohio's invitation to extend the *Ryan* doctrine to a shipper who, as the

result on the merits in the instant action between plaintiffs and Sohio reflects, owes no more than an ordinary duty to act as would a reasonably prudent person.

Affirmed.